IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| NISSAN NORTH AMERICA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 3:19-cv-00450 |
| v. | ) | |
| | ) | Judge Eli Richardson |
| ATS AUTOMATION GLOBAL SERVICES USA, INC.; ATS ASSEMBLY AND TEST, INC., | ) ) ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S ANSWER TO DEFENDANTS' COUNTER-COMPLAINT**

Plaintiff, Nissan North America, Inc. ("Nissan"), for its answer to Defendants' Counter-complaint, respectfully states as follows:

1. It is admitted that Nissan requested bids for the engineering, design, fabrication and installation of an automated intermediate leak test system to check V8 cylinder blocks. Nissan made that request via a written Scope of Work dated May 22, 2017. Allegations inconsistent with this response are denied.

2. It is admitted that leak test systems are technical and sophisticated pieces of equipment that must be designed, manufactured and installed with precision. It is admitted that Defendants/Counter-plaintiffs ATS Automation Global Service USA, Inc., and/or ATS Assembly and Test, Inc. (hereinafter collectively "ATS") repeatedly represented that they employ the most highly trained engineers and design professionals who would personally design a "world class" leak detection system for Nissan. Nissan denies that it did anything to cause or contribute to ATS' failure to design, make and install the subject equipment by the agreed deadline. Allegations inconsistent with this response are denied.

{00131374.DOCX / ver:2 }

3. It is admitted that ATS submitted a written proposal to Nissan dated June 15, 2017. Allegations inconsistent with this response are denied.

4. It is admitted that ATS submitted a written proposal to Nissan dated June 15, 2017. Through that proposal, ATS offered to design, make, install and sell the subject equipment to Nissan for $849,970. The price was adjusted to $825,684 via a bid form dated June 16, 2017. Allegations inconsistent with this response are denied.

5. It is admitted that ATS submitted a 34-page written proposal dated June 15, 2017. The terms of that proposal are reflected in the document and should be considered as a whole. Allegations inconsistent with this response are denied.

6. It is admitted that ATS submitted a 34-page written proposal dated June 15, 2017. The terms of that proposal are reflected in the document and should be considered as a whole. Allegations inconsistent with this response are denied.

7. It is admitted that Nissan issued a 4-page Purchase Order number 7400104278, the terms of which are reflected in the document and should be considered as a whole. Allegations inconsistent with this response are denied.

8. Denied.

9. Nissan admits that a tooling plate changeover was discussed but expressly denies that such was unusual and/or caused significant delay. Allegations inconsistent with this response are denied.

10. Denied. ATS caused ALL-TEC Machinery Repair, LLC ("ALL-TEC") to become involved in the subject project. ALL-TEC did not become involved until after ATS wrongfully subcontracted out the design work, failed to begin fabrication of the equipment in a timely manner, and failed to deliver the equipment by the agreed delivery deadline. After ATS failed to perform,

Nissan offered to ask ALL-TEC to fabricate certain components of the machine, at ATS' expense and according to ATS' design, in hopes that the project could be completed. ATS specifically agreed to Nissan's suggestion. Unfortunately, ALL-TEC's involvement was not enough to salvage the project due to design flaws and other problems caused by ATS.

11. Denied.

12. Nissan admits that it provided ATS with accurate information regarding the blocks that would be tested by the subject equipment, and it denies that any information or data provided by Nissan caused significant delay. Allegations inconsistent with this response are denied.

13. Denied.

14. Denied.

15. It is admitted that, on November 12, 2017, ATS informed Nissan that ATS would not meet the agreed deadline for installing the equipment during the Christmas shutdown. Allegations inconsistent with this response are denied.

16. It is admitted that, on November 12, 2017, Jeffrey Steinaway of ATS and Casey Boswell of Nissan exchanged email correspondence regarding ATS' failure to meet the agreed equipment installation dates during the Christmas shutdown. That correspondence should be viewed as a whole. Allegations inconsistent with this response are denied.

17. It is admitted that, during the months following ATS' November 12, 2017 revelation that it would not meet the agreed installations dates, Nissan and ATS were in fairly regular contact regarding ATS' efforts to complete the project. During those months, ATS made numerous false promises regarding the progress and timing of the project. In addition, ATS essentially admitted that the project delays were the direct result of its own failings. Allegations inconsistent with this response are denied.

18-24. Denied as stated. It is admitted that, after it missed the first agreed instillation deadline, ATS promised (falsely) to complete and install the equipment during a March 2018 shutdown. Frustrated by ATS' false promises, repeated delays and lack of transparency, Nissan insisted that ATS meet the revised March 2018 installation deadline, and it insisted on receiving the equipment that Nissan had paid for. It is admitted that Nissan representatives travelled to the ATS facility and found that the subject equipment was not in proper condition and did not pass required testing. At that point, Nissan insisted that ATS deliver the equipment to Nissan's Decherd plant, and Nissan insisted that ATS repair, complete and install the subject equipment at the Dechard plant so that Nissan could observe the project's progress. At no time did Nissan agree to accept the equipment as is or in a non-functioning condition. All correspondence exchanged between the parties regarding problems with the equipment and ATS' lack of performance should be viewed in context and as a whole. Allegations inconsistent with this response are denied.

25. Denied as stated. It is admitted that, after numerous missed deadlines, false promises and a complete lack of transparency by ATS, Nissan lost confidence in ATS' ability to perform, and Nissan began to insist that ATS enlist the aid of ALL-TECH (at ATS' expense) in order to complete the project. All correspondence exchanged between the parties should be viewed in context and as a whole.

26-29. Denied as stated. It is admitted that, after numerous missed deadlines, false promises and a complete lack of transparency by ATS, Nissan lost confidence in ATS' ability to perform, and Nissan insisted that ATS deliver the equipment to Nissan's Decherd plant, and Nissan insisted that ATS repair, complete and install the subject equipment at the Decherd plant so that Nissan could observe the project's progress. Once again, ATS failed to complete the project. It is admitted that, after ATS failed to complete the project at the Decherd plant, Nissan told ATS to

remove the faulty equipment and work on it elsewhere. All correspondence exchanged between the parties should be viewed as a whole and in context.

30. It is admitted that ATS received the non-functioning equipment at its Wixom facility in May of 2018. Nissan lacks knowledge sufficient to admit or deny the remaining allegations in paragraph 30.

31. Nissan admits that ATS provided a schedule showing arrival of the unassembled equipment to Nissan's Decherd plant in late July 2018. That proposed schedule was contrary to ATS' prior promises and was completely unacceptable to Nissan. All allegations inconsistent with this response are denied.

32. Nissan admits that on or around June 12 or 13, 2018, it provided ATS with a letter exercising its option to terminate the Contract pursuant to Sections 3, 4 and 7. Nissan also demanded that ATS promptly return funds that Nissan paid to ATS and that ATS pay for Nissan's other losses and costs. All allegations inconsistent with this response are denied.

33. Denied.

34-38. It is admitted that, after Nissan terminated the Contract in June of 2018 due to ATS' misrepresentations and complete failure to perform, the parties continued to engage in certain back and forth correspondence. During that correspondence, ATS expressed a desire to complete the long since failed project, and Nissan insisted that ATS refund Nissan's payments and that ATS pay Nissan's other costs and losses. That correspondence should be viewed as a whole and in context. Allegations inconsistent with this response are denied.

**Count I – Breach of Contract**

39. Nissan realleges and incorporates by reference the answers set forth in the paragraphs above.

40. Denied.

41. Denied.

42. Denied.

43. Denied.

44. Denied.

45. Denied.

46. Nissan denies that any ATS entity possesses valid claims against it.

**Count II – Breach of Contract**

47. Nissan realleges and incorporates by reference the answers set forth in the paragraphs above.

48. Denied.

49. Denied.

50. Denied.

51. Nissan admits that it told ATS that it would not pay retained funds if the equipment was non-functioning. Nissan admits that it told ATS that it did not trust ATS and doubted whether ATS was capable of completing the projection. All other allegations are denied.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

56. Denied.

57. Nissan denies that any ATS entity possesses valid claims against it.

### Count III – Breach of Contract

58. Nissan realleges and incorporates by reference the answers set forth in the paragraphs above.

59. Admitted.

60. Denied.

61. Denied.

62. Denied.

63. Nissan denies that any ATS entity possesses valid claims against it.

### Count IV – Promissory Estoppel

64. Nissan realleges and incorporates by reference the answers set forth in the paragraphs above.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Nissan denies that any ATS entity possesses valid claims against it.

### Count V – Unjust Enrichment

70. Nissan realleges and incorporates by reference the answers set forth in the paragraphs above.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Nissan denies that it has been unjustly enriched or that ATS is entitled to recover any amount.

76. Nissan denies that any ATS entity possesses valid claims against it.

77. All allegations inconsistent with the above responses are denied.

78. Nissan expressly denies all allegations contained in ATS' counter-complaint other than those expressly admitted above.

## Additional Defenses

79. ATS' counter-complaint fail to state a claim for which relief can be granted.

80. ATS' claims are barred by the doctrine of unclean hands.

81. ATS' claims are barred by the doctrine of equitable estoppel.

82. ATS failed to mitigate its damages.

NOW THEREFORE, having fully responded to the allegations contained in ATS' counter-complaint, Nissan denies that ATS is entitled to any relief claimed.

Nissan demands a jury to try this cause.

Respectfully submitted,

LEADER, BULSO & NOLAN, PLC

/s/ George Nolan
Eugene N. Bulso, Jr. (B.P.R. No. 12005)
George Nolan (B.P.R. No. 14974)
Paul J. Krog (B.P.R. No. 29263)
414 Union Street, Suite 1740
Nashville, Tennessee 37219
(615) 780-4114

*Attorneys for Nissan North America, Inc.*

CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2019, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to the following counsel of record:

Dwight E. Tarwater
Lindsey M. Collins
Paine, Tarwater, and Bickers, LLP
900 South Gay Street, Suite 2200
Knoxville, Tennessee 37902

/s/ George Nolan